IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM VORPAGEL, Individually and Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 02671 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| ANDREW SAUL, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In January 2016, William Vorpagel left his job as a forklift operator due to problems with his lumbar spine. In November 2018, he joined over eight million others currently receiving disability benefits from the Social Security Administration (SSA).[1] According to Vorpagel, however, his benefits are lower than they should be and he brings this suit "based on Defendant's failure to properly calculate and make appropriate Social Security benefit payments" to himself and to a putative class of disability benefit recipients. The defendant, Andrew Saul,[2] the Commissioner of the SSA, has filed a motion to dismiss, arguing that Vorpagel has not exhausted his administrative remedies as required by the Social Security Act, but Vorpagel asserts that he should be excused from the exhaustion requirement because, at bottom, the SSA makes too many mistakes in calculating disability benefits when an offset for workers' compensation benefits is

---

[1] *See Selected Data From Social Security's Disability Program*, Social Security Administration, https://www.ssa.gov/oact/STATS/dibStat.html.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party for the former Acting Commissioner pursuant to Fed. R. Civ. P. 25(d). The defendant will be referred to as the Social Security Administration (SSA).

required. The exhaustion requirement exists to provide agencies like the SSA with the opportunity to address their mistakes before federal courts are authorized to step in, however, so mistakes or no, the Court declines to excuse Mr. Vorpagel from the exhaustion requirement and grants the SSA's motion to dismiss, both with respect to Mr. Vorpagel's individual claim and his class claims.

## BACKGROUND

William Vorpagel has been unemployed since January 2016 when he left his job as a forklift operator due to problems with his lumbar spine. In August 2016, Mr. Vorpagel applied to the SSA for disability and disability insurance benefits, but his application was denied in January 2017. Compl. ¶ 31, ECF No. 1; Denial, ECF No. 13-1. A month later, Vorpagel filed a request for reconsideration but this, too, was denied, in May 2017. *See* Request for Reconsideration, ECF No. 13-2; Second Denial, ECF No. 13-3. Later in May, Mr. Vorpagel followed up with a request for a hearing before an administrative law judge (ALJ). *See* Request for Hearing, ECF No. 13-4. The request was granted and, in early November, an ALJ returned a "fully favorable" decision regarding Vorpagel's claims. Compl. ¶ 32 ("Notice of Decision"). The ALJ found that Vorpagel was entitled to benefits and that he had been disabled since January 2016. *Id.* The ALJ's decision, however, was limited to the issue of whether Mr. Vorpagel was eligible for disability benefits; it made no calculation regarding the benefits due and, with respect to the workers' compensation Mr. Vorpagel had received, noted only that "[t]he workers' compensation offset provisions at 20 CFR 404.408 may be applicable." Notice of Decision at 7, ECF No. 10-1. The Notice of Decision also advised Mr. Vorpagel that he had the right to appeal the decision with the Appeals Council (though because the decision was "fully favorable" to Mr. Vorpagel, there was no reason for him to appeal the eligibility determination and he did not do so). *Id.* at 1.

On December 3, 2018, the SSA issued a "Notice of Award," which set out Mr. Vorpagel's monthly benefits and calculated a lump sum payment Vorpagel would receive for the 29 months that his claim had been pending. Compl. ¶¶ 33-34. The Notice also stated that, in accordance with 28 U.S.C § 424a, Vorpagel's benefits—both future monthly payments and the retrospective lump sum payment—had been reduced due to his ongoing receipt of workers' compensation. *Id.* ¶ 36. Finally, the Notice instructed Vorpagel that he had 60 days to appeal if he disagreed with any part of the award.[3] *See* Notice of Award at 6-7, ECF No. 10-2.

Soon thereafter, on December 11, Vorpagel's counsel sent a letter informing SSA of a perceived problem with the calculation. *See* Letter from Neil Good, ECF No. 13-7. According to Vorpagel, his workers' compensation had ended in October 2017, rendering the continued reduction inaccurate and resulting in a deficit of $24,000 in the lump sum calculated by SSA. *Id.* To substantiate his position, Vorpagel provided a letter from the workers' compensation insurer's counsel confirming that his benefits had been terminated in October 2017. *See* Letter from Counsel, ECF No. 13-8. SSA responded in March 2019 and requested that Mr. Vorpagel verify the stoppage by filling out a form and providing further proof that he was no longer receiving worker's compensation payments. *See* March 2019 SSA Letter, ECF No. 13-9. On April 9, 2019, Vorpagel responded by filling out the form, but he did not provide the additional evidence requested by SSA.[4] *See* Vorpagel-SSA Correspondence at 1, ECF No. 10-3. Instead, less than two

---

[3] The complaint's allegations that neither Plaintiff nor the other members of the putative Class were informed that they could appeal the fact that they were receiving improper payments (*e.g.,* Compl. ¶¶ 6, 13) is, therefore, not accurate and the Court does not credit it. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) ("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

[4] The SSA form inquired whether Mr. Vorpagel had appealed the termination of his workers' compensation benefits. He responded by indicating that he had not, but that his case was still pending and that he was waiting on a lump sum settlement payment. ECF No. 13-9.

weeks later, Vorpagel brought this lawsuit. In June 2019, SSA sent Vorpagel another letter, reiterating its request for evidence and specifying the types of documentation that would resolve the issue. *Id.* at 4. Later in June 2019, SSA moved to dismiss Vorpagel's claims.[5]

After the parties completed the briefing on SSA's motion, however, Vorpagel supplied SSA with the requested additional documentation and SSA re-calculated Vorpagel's benefits to account for the October 2017 termination of his workers' compensation benefits and provided for a lump sum payment to account for the underpayment of Mr. Vorpagel's benefits after October 2017 and an increase in the monthly payment amount going forward. *See* Def.'s Mot. to Take Suppl. Notice of Subsequent Administrative Proceeding at 2, ECF No. 15. The Notice of Change of Benefits that Vorpagel received advised that Mr. Vorpagel could appeal the revised calculation if he believed that it was still incorrect. *See id.* According to Vorpagel, SSA's revised calculation was, once again, incorrect—this time due to a failure to properly deduct attorney's fees from the workers' compensation settlement—and, as a result, his claim remains in need of resolution. To date, however, Mr. Vorpagel has not appealed the revised benefit award.

---

Ultimately, Mr. Vorpagel received a lump sum payment of $40,000 to settle his workers' compensation claim. That payment, amortized over Mr. Vorpagel's remaining life expectancy, did not require further offset of SSA disability benefits to Mr. Vorpagel. *See* ECF No. 15-1 at 2 ("This monthly rate . . . does not affect your Social Security benefit amount beginning November 2017.").

[5] Because the briefing on Vorpagel's claim is limited to the issue of compliance with 42 U.S.C. § 405(g)—a jurisdictional question—the Court assesses Vorpagel's claims under Rule 12(b)(1). *See Martin v. Shalala*, 63 F.3d 497, 498 (7th Cir. 1995) ("Because the plaintiffs failed to exhaust the § 405(g) requirements, the district court properly dismissed their claims for lack of subject matter jurisdiction."). *See infra* note 6 for further discussion of the jurisdictional nature of the question at issue. The Court notes, however, that the analysis and result are the same whether the claims are properly assessed under Rule 12(b)(1) as a motion to dismiss for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

**DISCUSSION**

In assessing a motion to dismiss under Rule 12(b)(1), the Court "accept[s] as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor unless [jurisdiction] is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). Nonetheless, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014).

As a general matter, 42 U.S.C § 405(h) precludes federal jurisdiction over claims arising under the Social Security Act. *See Weinberger v. Salfi*, 422 U.S. 749, 756-61 (1975). As a result, "[t]he only avenue" for federal court review of a denial of social security benefits is through 42 U.S.C. § 405(g), *see Eldridge v. Mathews,* 424 U.S. 319, 327 (1976), which "allows for judicial review of 'any final decision . . . made after a hearing'" by SSA. *Smith v. Berryhill*, 139 S. Ct. 1765, 1771 (2019) (quoting 42 U.S.C. § 405(g)). Courts have construed this requirement to "consist of two elements": first, the "nonwaivable" requirement that a claim for benefits be presented to the Secretary; second, the "waivable" requirement that "all administrative remedies prescribed by the Secretary be exhausted." *Eldridge*, 424 U.S. at 328. Exhaustion may either be waived by SSA or excused by a court. *Smith*, 139 S. Ct. at 1773-74 ("While § 405(g) delegates to the SSA the authority to dictate which steps are generally required, exhaustion of those steps may not only be waived by the agency, but also excused by the courts.") (internal citations omitted).[6]

---

[6] That administrative exhaustion is, in some cases, waivable or non-jurisdictional does not mean that a failure to exhaust is not, in other cases, a jurisdictional problem. When courts excuse administrative exhaustion, they are not excusing the statutory requirements of § 405(g); rather they are determining that agency-defined exhaustion is not necessary for statutory "finality." *See Smith*, 139 S. Ct at 1777 ("[T]he Court's precedents do not make exhaustion a pure necessity, indicating instead that while the SSA is empowered to define the steps claimants must generally take, the SSA is not also the unreviewable arbiter of whether a claimant has sufficiently complied with those

As relevant here, exhaustion of generally applicable administrative remedies may be excused by the court if: "(1) [t]he claim . . . [is] collateral to a demand for benefits; (2) exhaustion of the administrative process would be futile; and (3) the plaintiffs would suffer irreparable harm if required to move through the administrative procedure before obtaining relief." *Martin v. Shalala*, 63 F.3d 497, 504 (7th Cir. 1995). In assessing these factors, courts should not proceed "mechanical[ly]." *Bowen v. City of New York*, 476 U.S. 467, 484 (1986). Rather, the exhaustion requirement is an "intensely practical" doctrine best administered with an eye to the underlying principles. *Id.* (quoting *Eldridge*, 424 U.S. at 331 n.11). Exhaustion exists to prevent "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Salfi*, 422 U.S. at 765.

---

steps."). The question at the exhaustion stage is whether exhaustion is necessary for finality. *See id.* at 1777 ("The question here is whether a dismissal by the Appeals Council on timeliness grounds after a claimant has received an ALJ hearing on the merits qualifies as a "final decision ... made after a hearing" for purposes of allowing judicial review under § 405(g)."); *Eldridge*, 424 U.S. at 330 ("The question is whether the denial of Eldridge's claim to continued benefits was a sufficiently 'final' decision."). If a court determines that agency-defined exhaustion is not statutorily required, "exhaustion itself is not a jurisdictional prerequisite." *Smith*, 139 S. Ct. at 1779. In *Smith*, for example, the Court determined that a claimant who had received "a claim-ending timeliness determination from the agency's last-in-line decisionmaker after bringing his claim past the key procedural post (a hearing)" had met § 405(g)'s requirements despite a failure to exhaust. *Id.* at 1777. On the other hand, if a court determines that finality requires exhaustion, a failure to exhaust becomes a jurisdictional problem requiring dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Smith v. Comm'r of Soc. Sec.*, 880 F.3d 813, 820 (6th Cir.), cert. granted sub nom. *Smith v. Berryhill*, 139 S. Ct. 451 (2018), and rev'd and remanded sub nom. *Smith v. Berryhill*, 139 S. Ct. 1765 (2019) (reaching the opposite conclusion regarding "finality" and holding that "we find that the district court lacked jurisdiction to review the Appeals Council's dismissal of the untimely request for review.").

In its motion to dismiss, SSA's primary argument is that Vorpagel has not satisfied the waivable exhaustion requirement and that his failure to exhaust should not be excused.[7] On the question of exhaustion, SSA regulations specify that a final decision is rendered upon completion of a four-step administrative review process. 20 C.F.R. § 404.900(a). First, a claimant must seek an initial determination as to her entitlement to benefits. *Id.* Second, if dissatisfied with the initial determination, the claimant may ask for a reconsideration. *Id.* Third, if unsuccessful upon reconsideration, the claimant may request a hearing by an administrative law judge. *Id.* Fourth, if still dissatisfied, the claimant may exercise her right to review by the SSA Appeals Council. *Id.*

As of its filing of the motion to dismiss, SSA argued that Vorpagel was "at step two of the four-step process." Mem. Sup. Def.'s Mot. Dismiss at 5, ECF No. 10. Even after SSA's subsequent reconsideration of Mr. Vorpagel's benefits determination, this remains the correct characterization of Vorpagel's position within the administrative process. Vorpagel received an initial determination (step one) when he was provided a Notice of Award. *See* § 404.902 (listing both "amount of your benefit" and a "reduction in your disability benefits because you also receive benefits under a workmen's compensation law" as initial determinations).[8] Vorpagel then sought

---

[7] In a footnote, SSA also contends that Vorpagel's complaint does not allege that he "presented" his claim in satisfaction of the nonwaivable requirement, but this argument is without merit. Vorpagel's Complaint unambiguously states that he "filed for Social Security Disability benefits." Compl. ¶ 31, ECF No. 1. Taken as true, this satisfies the nonwaivable element. To present his claim, Vorpagel need not have presented to SSA the arguments that he raises in the instant case. *Eldridge*, 424 U.S. at 329 ("The fact that Eldridge failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling."); *Heckler v. Ringer*, 466 U.S. 602, 619 n.12 (1984) (finding the presentment requirement satisfied even though "the claims of respondents Holmes and Webster–Zieber were denied on grounds not even related to the instructions and rule which they now seek to challenge in federal court").

[8] As the SSA notes, the hearing that Mr. Vorpagel received with respect to his eligibility to receive benefits was not a hearing to review the Notice of Award, which concerned the amount of benefits. Mem., ECF No. 10, at 6 n.6. As to the Notice of Award, the plaintiff sought and received reconsideration of the decision; to the extent that he continues to contest the calculation of his benefit, he would presumably be entitled to a hearing before an ALJ with respect to the

7

reconsideration by expressing his disagreement with the determination in his December 11, 2018 letter (step two), but he did not provide SSA with the information it deemed necessary to complete the reconsideration. Consequently, the process had stalled between steps two and three when Mr. Vorpagel filed this suit.

After briefing on the motion to dismiss was complete, however, Mr. Vorpagel supplied the requested information and SSA provided a reconsidered determination substantially increasing his disability benefits. Vorpagel remains unsatisfied with the calculation, albeit for a different reason. Neither SSA's reconsideration nor Vorpagel's dissatisfaction, however, triggers the next step in the process—Vorpagel must request a hearing with an administrative law judge to move from step two to step three. He has not done so, and his administrative remedies remain unexhausted. Therefore, judicial review is available under § 405(g) only if the Court determines that "deference to the agency's determination of finality [is] not necessary" (here, non-finality), and exhaustion should be waived. *Bowen*, 476 U.S. at 483.

In assessing waiver, courts first ask whether the present claim is "collateral to a demand for benefits." *Martin*, 63 F.3d at 504. A claim may be collateral where (1) it attacks the validity of the agency "policy itself, not [ ] its application," *Johnson v. Sullivan*, 922 F.2d 346, 353 (7th Cir. 1990), and (2) the court's "holding regarding the validity of that policy stands independent of the ultimate merits of" the claim for benefits. *Marcus v. Sullivan*, 926 F.2d 604, 614 (7th Cir. 1991). *See also Miller v. Burwell*, No. 14 C 4245, 2015 WL 2257278, at *6-7 (N.D. Ill. May 11, 2015)

---

benefits determination. But even were that not so, Mr. Vorpagel would still not have exhausted his administrative remedies because he has not pursued an appeal to the Appeals Council with respect to the Notice of Decision, the Notice of Award, or the Notice of Change in Benefits. And contrary to Mr. Vorpagel's allegations, he received notice of his right to appeal each of those determinations. Mr. Vorpagel's claim in his Response that, because he supplied SSA with information (albeit not the information SSA required) he "***did*** exhaust" the administrative process, Pl.'s Resp. at 3 (emphasis in original), is completely without merit.

8

("[A] claim is collateral where it doesn't automatically increase benefits if successful."). In *Johnson*, for example, the Seventh Circuit addressed a challenge to SSA's policy of not considering the combined effects of non-severe impairments when assessing disability. 922 F.2d at 347. The Seventh Circuit found the challenge to be collateral: success would mean that "some claimants will now receive the benefits they were once denied," but "[f]or other claimants, the invalidation of the policy will make no difference." *Id.* at 354. Put differently, "the policy rises and falls on its own, separate from the merits of their claims for benefits." *Id.* Courts distinguish this sort of facial challenge from challenges alleging "a mere deviation from applicable regulations." *Bowen*, 476 U.S. at 484. Claims of erroneous application are not collateral because success would necessarily alter a finding in the benefits dispute and thereby advance the demand for increased benefits—whether the altered finding is the ultimate benefits determination or a subsidiary one. *See Martin*, 63 F.3d at 504 (finding, in the analogous Medicare context, that the present challenge was "part and parcel" of the benefits claims where plaintiffs challenged the "application and administration of provisions and their methods" of making locality classifications that determined reimbursement levels, holding that where a complaint "seeks damages for lost benefits, we cannot consider it as anything other than a claim for higher benefits").

Vorpagel's complaint asserts a claim for additional benefits, not a collateral challenge to an SSA policy. His complaint expressly "seeks to recover the retroactive underpayments for Plaintiff and the putative Class, to correct the current underpayments going forward, and to permanently enjoin SSA from incorrectly calculating and assigning benefit payments." Compl. ¶ 8. Consistent with his assertion that SSA incorrectly calculated his workers' compensation offset,

Mr. Vorpagel's complaint asserts two "causes of action."[9] In the first, he contends that the SSA violated applicable policies by failing "to accurately and properly perform the workers' compensation offset" and thereby "underpaid Plaintiff and members of the Class." *Id*. ¶¶ 51-52. Put another way by Mr. Vorpagel, he asserts in the complaint that SSA "fails in its execution" of its workers' compensation offset policies. *Id*. at ¶ 3. That is a claim to correct an erroneous disability determination by the SSA. So too the second legal theory advanced, which is that a writ of mandamus should issue to require the SSA "***to fix the errors*** in SSA's calculations . . . and to ***correct all underpayments***." *Id.* ¶ 61 (emphasis added). A claim that seeks correction of errors made in calculating benefit payments and resulting in underpayments is, as the Supreme Court and Seventh Circuit have repeatedly held, a claim on the merits that must be exhausted under § 405(g) before it can be reviewed by a federal court. *See, e.g., Bowen*, 476 U.S. at 484; *Heckler v. Ringer*, 466 U.S. 602, 617-18 (1984); *Martin*, 63 F.3d at 504.

Notwithstanding the express allegations of his complaint, Vorpagel asserts in his brief that he is mounting a collateral challenge and that exhaustion should therefore be deemed waived. According to Vorpagel's brief, his complaint "is that SSA fails to follow its own policies in verifying when workers' compensation benefits terminated before issuing an award, not whether he is entitled to benefits." *See* Pl.'s Resp. at 2, ECF No. 13. But that statement just confirms that

---

[9] With the adoption of the Federal Rules of Civil Procedure in 1938, the United States did away with code pleading and "causes of action," replacing them with "claims for relief." *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 Fed. App'x 541, 545 (7th Cir. 2018). A claim for relief is simply a description of the events and acts asserted to give rise to legal liability. Though pled in two "causes of action," the plaintiff asserts one claim—that SSA miscalculated his disability benefits. Accordingly, what the complaint labels as "causes of action," the Court construes as the enumeration (permissible, but not required) of legal theories that the plaintiff contends support his claim and permit the requested relief.

10

Vorpagel is not mounting a facial challenge to a policy; he is seeking to enforce, not invalidate, SSA policy.

Specifically, Mr. Vorpagel says that he is seeking to enforce SSA's policy requiring claim evaluators, when determining offsets based on the receipt of workers' compensation benefits, to verify the dates that the claimant's workers' compensation benefits ended. Vorpagel argues that SSA's internal claims processing guidelines "make clear that SSA has the responsibility to verify what workers' compensation benefits are received," and set forth "a detailed system for developing the necessary information prior to adjudicating an award, including how to obtain the information from third parties." Pl.'s Resp. at 5.[10] Mr. Vorpagel maintains his benefits were too low because SSA failed to verify that he was no longer receiving workers' compensation benefits and therefore erroneously continued to offset his disability benefits on the incorrect assumption that he continued to receive workers' compensation payments. SSA, he argues, "repeatedly and systematically" makes the same error in calculating workers compensation offsets for disability claimants.[11]

---

[10] SSA's internal procedures are set forth in its Program Operations Manual System ("POMS"). "The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits." *See* https://secure.ssa.gov/apps10/. The Court assumes, for the purposes of this motion, that Mr. Vorpagel's characterization and interpretation of the POMS is correct.

[11] Whenever there are predictable or repeated errors in an agency calculation, it is logically possible to re-characterize the problem as a *de facto* policy of intentional miscalculation. The "characterization of [a] challenge . . . as a purely legal or statutory question, however, is not sufficient by itself to constitute an 'entirely collateral' claim." *Cathedral Rock of N. Coll. Hill, Inc. v. Shalala*, 223 F.3d 354, 363 (6th Cir. 2000). And in any event, the theory of the complaint is not that SSA's errors reflect the existence of a *de facto* policy to deprive claimants of the benefits to which they are otherwise entitled under SSA regulations. As emphasized throughout this opinion, Vorpagel's complaint—explicitly requesting increased benefits—and his response to SSA's recalculation—disputing mootness by identifying a remaining miscalculation in his benefits award, not an allegedly unchanged *de facto* policy—indicate that his claim is, at bottom, an effort to increase his benefits.

That is not a facial challenge to a policy that is independent of the outcome of the merits of the plaintiff's claim; it is a claim that the agency miscalculated the benefits he was owed based on its failure to follow the "clear," "straightforward," "plainly defined and non-discretionary" process for computing workers' compensation offsets. *See* Compl. ¶¶ 56-57, 23, 3. The resolution of that challenge is not independent of the resolution of Vorpagel's claim for disability benefits; they are one and the same. When evaluators fail to verify the termination of workers' compensation benefits, Vorpagel maintains—and basic arithmetic confirms—the invariable result is underpayment of disability payments. Compl. at ¶ 3 ("SSA systematically fails in its execution of this otherwise straightforward process, thereby leading to the gross underpayment of both retroactive payments as well as monthly payments going forward."). Vorpagel brought this suit "to recover the retroactive underpayments" and "to correct the current underpayments going forward." Compl. ¶ 8. A ruling that SSA must adhere to the process for determining workers' compensation offsets allegedly set forth in the POMS would hardly satisfy Mr. Vorpagel's claim, which seeks a determination of benefits due, not merely a declaration of the process that SSA must employ in making such determinations.[12]

Even if Vorpagel's challenge could be construed as collateral, exhaustion would still not be appropriate. To justify excusing the exhaustion requirement, a court must also find that

---

[12] It bears noting that treating Mr. Vorpagel's claim as collateral and excusing exhaustion would likely not yield a judicial determination of the workers' compensation benefits owed to Mr. Vorpagel. Waiver of the exhaustion requirement would deprive the Appeals Council of any opportunity to review Mr. Vorpagel's claim on the merits. The Supreme Court has repeatedly instructed courts reviewing final agency action to refrain from deciding questions that the final decision maker for the agency has not addressed and recently confirmed that its "cases discussing exhaustion in the Social Security context confirm the prudence of applying this general principle." *Smith*, 139 S. Ct. at 1780a. Thus, even if this Court waived exhaustion, considered Vorpagel's claim, and agreed that the SSA had failed to adequately verify termination of his receipt of workers' compensation, the likely course would then be to remand the matter back to the SSA for a determination on the merits.

requiring exhaustion of the administrative process would be "futile" and that the plaintiffs "would suffer irreparable harm if required to move through the administrative procedure before obtaining relief." *Martin*, 63 F.3d at 504. Mr. Vorpagel has provided no basis to support either finding. As to futility, the record reflects that Mr. Vorpagel's resort to SSA's administrative process has met with success, first with respect to his eligibility determination even after initial denials, and subsequently with respect to computation of the workers' compensation offset; the mere fact that Vorpagel now takes issue with SSA's subsequent benefit determination cannot support a finding that requiring further resort to administrative process regarding his objection to his benefits calculation would be doomed to fail. *See Health Equity Res. Urbana, Inc. v. Sullivan*, 927 F.2d 963, 966 (7th Cir. 1991) (finding exhaustion not futile where there was "nothing . . . to prevent [plaintiff] from challenging the regulation before the Appeals Council"). Mr. Vorpagel maintains that SSA still doesn't have it right, but the point is that the administrative process, even if not a model of efficiency, is providing a legitimate means of contesting disability benefit determinations.

Nor does the mere fact that further resort to administrative process may further delay his receipt of all the benefits he is due establish that Mr. Vorpagel will be irreparably harmed by requiring exhaustion. Mr. Vorpagel is already receiving a substantial portion of the benefits he claims to be due and has not even attempted to allege facts that would establish any particularized need to skip agency review of his further objections to SSA's benefit determination.[13] Mr. Vorpagel offers only a generalized claim of harm that is inherent in any and every case in which a

---

[13] It bears noting as well that if one accepts Mr. Vorpagel's characterization of his claim as collateral and not on the merits, waiving exhaustion would likely further delay, rather than accelerate, a determination of the merits of his claim because this Court's consideration would be limited to determining what, if anything, SSA was required to do to collect information needed to calculate the workers' compensation offset accurately. *See supra* note 12.

claimant is disabled. Permitting waiver of exhaustion on that basis alone would eviscerate the requirement for a broad class of cases. Mr. Vorpagel also complains that absent waiver of the exhaustion requirement, SSA can effectively avoid judicial review of benefit determinations, but that is true only if claimants fail to pursue the reconsideration, hearing, and appeal rights that SSA provides. As there is no basis to credit Mr. Vorpagel's contention that disability claimants were not provided notice of SSA's computations (*see supra* note 3) and the procedures at issue are, as Mr. Vorpagel concedes, set forth in the POMS in a "clear" and "straightforward" manner, that concern does not warrant waiver of the exhaustion requirement. *See Johnson*, 922 F.3d at 354-55 (declining to excuse exhaustion for putative class members where challenge was to a policy that was openly applied by SSA).

The Court therefore concludes that waiver of the exhaustion requirement is not appropriate in any event, but that is particularly so given the undisputed fact that SSA has recomputed Mr. Vorpagel's workers' compensation offset and increased his disability payments based on accurate data confirming termination of his workers' compensation payments in October 2017. After filing his complaint, Mr. Vorpagel supplied SSA with the documentation it needed to verify the dates and amounts of the workers' compensation payments he had received and, armed with that information, SSA provided an updated calculation. At a post-briefing court hearing, however, Mr. Vorpagel's counsel maintained that the dispute is not moot because SSA has made another error in failing to deduct attorney's fees from the workers' compensation amount over the proper period, resulting in an underpayment of about $25 per month. Whatever the merit of that contention, Mr. Vorpagel's continuing objection to the amount of the disability determination by SSA, even after SSA correctly factored in the termination of his workers' compensation benefits, confirms that his claim is, and has been, about alleged errors in that calculation, not about a challenge to SSA policy.

Again, the relief requested by this claim—that SSA re-do the calculation with the attorney's fees properly deducted—would necessarily increase his benefits. Vorpagel complains of chronic miscalculation by SSA, but errors in the administration of a complex benefits scheme are precisely the type of problem that exhaustion is designed to remedy. *See Salfi*, 422 U.S. at 765 (stating that, among other reasons, exhaustion exists to allow the agency "an opportunity to correct its own errors").[14] In sum, Vorpagel's remaining challenge is "part and parcel" of his claim for benefits and the relevant underlying principles favor exhaustion; therefore, the Court concludes that Vorpagel's failure to exhaust his claim deprives the Court of subject matter jurisdiction.[15] *See Martin*, 63 F.3d at 504.

Mr. Vorpagel's lack of a justiciable claim also spells the end of his claim on behalf of a putative class. Lacking a claim himself, he cannot assert the claims of others (even if those claims might, unlike Vorpagel's, be exhausted). "A class representative must be 'part of the class and possess the same interest and suffer the same injury as the class members.'" *Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1420 (7th Cir. 1985) (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case

---

[14] The claim found collateral in *Steigerwald v. Comm'r of Soc. Sec.* is distinguishable. No. 1:17-CV-1516, 2018 WL 454400 (N.D. Ohio Jan. 17, 2018). In *Steigerwald*, SSA "admit[ted] that it owed Steigerwald additional benefits after a windfall offset recalculation." *Id.* at *5. Because the underlying entitlement to greater benefits was not in dispute, the court reasoned that "Steigerwald's current claim is, at its core, simply an attempt to force SSA to finish calculating the amount of the benefits that SSA admits it owes her." *Id.* In the present case, SSA has made no such admission—Vorpagel's claim is, at its core, an attempt to increase his underlying benefit, not an attempt to determine the process through which agreed upon benefits must be disbursed.

[15] Because Mr. Vorpagel has not exhausted his administrative remedies, his request for a writ of mandamus also necessarily fails. "The common law writ of mandamus . . . is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Ringer*, 466 U.S. at 616-17 (holding that § 405(g) precludes mandamus jurisdiction where administrative remedies are still available).

or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."). Accordingly, the class claims are dismissed without prejudice as moot. *See Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (A determination that the named plaintiff's claim "lacks merit ordinarily, though not invariably ... disqualifies the named plaintiff[ ] as [a] proper class representative[ ]. The effect is to moot the question whether to certify the suit as a class action unless the lawyers for the class manage to find another representative.").

\* \* \* \* \*

For the reasons stated above, the SSA's motion to dismiss is granted. The dismissal terminates this case but is without prejudice to Mr. Vorpagel's pursuit of relief through the administrative process provided by the SSA, or to his right to seek judicial review of any final decision of the SSA.

Date: April 6, 2020

John J. Tharp, Jr.
United States District Judge